BACON *et al.* v. HENNESSEY.

(*Circuit Court, D. Minnesota.* June 27, 1888.)

SPECIFIC PERFORMANCE—GOOD FAITH AND DILIGENCE OF COMPLAINANT—TRUSTS
—FIDUCIARY RELATION.

Defendant took an assignment of, and had recorded, a contract for the sale of land to B. for $4,400, by which a warranty deed and payment were to be made June 22, 1882, time being made of the essence of the contract. For alleged imperfections in the record title, defendant refused to accept a deed or surrender the contract, and in 1885 the land was resold to R., who had agreed to give B. an interest, and who removed the defects in the title. In 1886 defendant and R. made a compromise, by which defendant obtained a half interest, and paid $2,750, he having previously paid but $100. The land was then worth $30,000. *Held,* that defendant could not be heard to claim that by reason of the original contract and assignment thereof B. sustained to him a fiduciary relation, and, R. having knowledge thereof, the half held by B. and R. was held in trust for defendant.

In Equity. Action for partition.
*Lusk & Bunn,* and *Rogers & Hadley,* for plaintiffs.
*H. C. McCarty* and *D. H. Lawler,* for defendant.

BREWER, J. This is an action of partition, commenced· upon the basis of a legal title, which stood part in the plaintiffs and part in the defendant. Thereupon the defendant filed a cross-bill alleging that while the legal title to part of the property stood in the original plaintiffs, equitably the defendant owned it all; and he seeks a decree quieting his title. On this cross-bill issue was joined, testimony taken, and the case is now submitted upon the pleadings and proofs. The facts developed are as follows: In March, 1882, one Chittenden was the owner of the land in controversy. He made a contract of sale with G. V. Bacon, one of the parties to this suit, by which he agreed to sell the land to Bacon for $4,400, 'and to make a warranty deed on or before June 22, 1882, with the further stipulation that Bacon was to pay at the time the deed was delivered, and that time was to be of the essence of the contract. Bacon paid nothing, but thereafter assigned his contract to Hennessey for $500,—$100 of which was paid, the balance to be paid when the title was completed. When the deed was tendered, during the summer or early fall of 1882, Hennessey made some objections to the title of Chittenden, some of which were good; the title of record not appearing perfect, though it may in fact have been so. It so ran along from 1882 to 1885, Hennessey having paid but $100, and having placed his contract on record, which put a clamp upon the property, and tied it up. Both Chittenden and Bacon insisted that he should take the title as tendered, or else throw up his contract, but he refused to do either. Wearied with delay, Chittenden and his agent, Bacon, went to work to find another purchaser, and persuaded Mr. Rogers to buy the land, and pay substantially the price named in the original contract. Chittenden made his deed, and received his money. Rogers took the deed, and cleared off the imperfections in the title; Bacon being the agent who was instru-

mental in consummating the matter. This was in September, 1885, and thereupon Mr. Rogers notified Mr. Hennessey that he claimed the title, and wanted to remove the cloud cast upon it by that original contract. The parties negotiated about this until March, 1886, when they agreed upon a compromise by which the title was divided, and Hennessey paid $2,750 more, so that his full payment was $2,850. The land in the mean time had risen rapidly in value, so that at the time of these transactions in 1885 and 1886 it was worth some $30,000. Hennessey claims that during these negotiations he was ignorant of the fact that Bacon had any interest with Rogers in this purchase, (in fact Rogers had agreed to give Bacon an interest in this property for his services,) and alleges that Rogers and Bacon agreed and conspired together to defraud him, and that his assignor Bacon, as the holder of the original contract, stood in a fiduciary relation to him, and was bound to perfect the title in him; and that, when Bacon attempted to transfer the title to Rogers, who knew all of the circumstances, both he and Rogers held the title in trust for him.

The main argument of counsel for Hennessey was directed to the conduct of Bacon and Rogers; and he claims that Bacon, as the assignor of Hennessey, and Rogers, cognizant of Bacon's position, stood in a fiduciary relation to Hennessey; and that Bacon, by reason of that assignment, was thereafter guilty of a breach of trust. To my mind the first question is not, what was the conduct of Bacon and Rogers? But what standing has the defendant Hennessey in a court of equity? He gets a contract for land in 1882, for which he pays $100, and puts that contract upon record. That is all the investment he makes; but when the deed is tendered to him, although a warranty deed is presented, he insists that all defects shall be removed. It stands that way for three years, with that clasp upon the title preventing the original owner from making any other disposition of it. He refuses to take back his $100, but insists upon keeping his hold upon the land, waiting for the chances of its rise or fall in value. After waiting three years, the original owner getting no money, and wanting to realize something out of this land, sells it elsewhere; and then the second purchaser, having obtained all the title that the original owner had, except that which was owned by Hennessey by virtue of his contract, and having cleared off all other apparent defects, negotiates with Mr. Hennessey, the negotiations running over four or five months, when they compromise and settle. A man who puts a contract upon record on which he has paid a mere bagatelle, and thus gets the chances of the rise or fall in value, and at the end of three years, when that property has risen in value at least sevenfold, comes in to enforce specific performance of the original contract, occupies an attitude which does not commend itself to the conscience of a court of equity. Whatever legal rights there may be, the conduct of a man who takes a contract on property, and ties it up so that the owner cannot sell it, and proposes to hold it so that if it becomes valuable he can insist upon his rights, and can drop it if the property should happen to depreciate in value, does not commend itself to a court of equity. I may say

that this is getting to be a very common transaction in this western country. A man obtains a contract for or an option upon land, pays a mere trifle, and then raises some question with regard to the title, refuses to complete his purchase, and holds the property for months, or perhaps years, all the while waiting for the chance of its going up in value. One who does that must stand on whatever legal rights he may have, and cannot come into a court of equity expecting to there enforce the benefits of such speculation. He who wishes to speculate must keep out of a court of equity. Furthermore, as to whether or not Hennessey knew that Bacon was interested, is immaterial. There is a dispute in the testimony as to that; but, setting that aside, it appears in any event that a compromise was effected, that the property was divided, and that Hennessey has obtained for $2,850 property which at the lowest calculation, according to the testimony, is worth $15,000; and now he comes and complains that he has failed to obtain the other half,—the other $15,000. He cannot be heard. A decree will be entered dismissing the cross-bill, and granting the partition. Ordered accordingly.